CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erica Choi (Bar No. 302351)
(E-Mail: erica_choi@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
SHAUNA NICOLAS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SHAUNA NICOLAS,<br><br>  Defendant. | Case No. 2:23-cr-112-GW<br><br>**DEFENDANT SHAUNA NICOLAS'S SENTENCING POSITION; EXHIBITS**<br><br>**Sentencing Hearing: July 28, 2025, at 8:00 a.m.** |

The defendant Shauna Nicolas, by and through her attorney, Erica Choi, hereby submits her position in advance of sentencing. For the reasons explained herein, the defense requests a sentence of 13 months' imprisonment, to be followed by three years of supervised release with terms and conditions.

                              Respectfully submitted,

                              CUAUHTEMOC ORTEGA
                              Federal Public Defender

DATED: July 18, 2025      By  /s/ Erica Choi
                              ERICA CHOI
                              Deputy Federal Public Defender
                              Attorney for SHAUNA NICOLAS

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. SENTENCING GUIDELINES ............................................................................2

      A.     Applicable Sentencing Guideline Factors ...................................................2

            1.     Mitigating Role Reduction ...............................................................2

      B.     Special Condition Number 10 .....................................................................4

III. SENTENCING ARGUMENTS ..........................................................................4

IV. CONCLUSION....................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

> "Since my mom has been gone, our world feels different. The laughter has faded, the support feels distant, and there's a space in our lives that no one else can fill. We miss her every single day—not just for what she did for us, but for who she is: a loving, caring, and strong woman who gave everything she had to her children."
>
> - Karmah Nicolas

Shauna Nicolas had a tragic upbringing and difficult circumstances as an adult. She has experienced homelessness, addiction, and mental health issues during her life. However, she is highly motivated to correct the mistakes she has made. She understands the consequences of her offense conduct. It has meant separation from her children and her husband, who are everything to her. Being in custody on this case, separated from her family, has been extremely difficult and eye-opening.

This case is unlike Ms. Nicolas. While she has some criminal history (no priors for fraud), she typically received sentences of probation and she successfully completed probation each time.[1] In sum, both her fraud conduct and her admittedly subpar performance on federal pretrial release are aberrant for Ms. Nicolas.

Ms. Nicolas has been in custody since October 18, 2024. This has been the longest she has been in custody, and apart from her family, ever. The defense requests the Court impose a sentence of no more than 13 months' imprisonment, followed by three years of supervised release. The requested sentence is reasonable and sufficient to address the statutory goals of sentencing.

///

---

[1] While the PSR notes two cases with sentences involving custody time, Ms. Nicolas reports those sentences involved home confinement.

1

## II. SENTENCING GUIDELINES

### A.  Applicable Sentencing Guideline Factors

The defense concurs with the Sentencing Guideline factors applied by the Probation Office in the PSR. Of note, the PSR and the government recommend a two-level enhancement for obstruction of justice, because Ms. Nicolas absconded on pretrial release. PSR ¶ 40. The defense acknowledges this guideline may technically apply, but believes the circumstances of her nonappearance are mitigating, and should be considered under 18 U.S.C. § 3553(a) (addressed below).

#### 1.  Mitigating Role Reduction

The Court should consider applying a two-level reduction for mitigating role. Section 3B1.2 provides for a two, three, or four-level reduction based on the defendant's role in the offense.

> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

For mitigating role, "[t]he relevant comparison is to the other participants in the defendant's crime, not to typical defendants who commit similar crimes." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (9th Cir. 2022); *accord United States v. Rodriguez*, 44 F.4th 1229, 1234-35 (9th Cir. 2022) ("the key question is how the defendant compares with the other participants in the offense."); *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006) ("[a] defendant's culpability is to be measured against his coparticipants, not a hypothetical 'average participant.'").

Critically, the Ninth Circuit has said that "[i]f the defendant is substantially less culpable than that average and meets the other criteria, he should be granted a

mitigating role adjustment." *See id.* (emphasis added). Indeed, the Ninth Circuit observed that the reason the Sentencing Commission amended § 3B1.2 in 2015 was because the role adjustment was "being applied inconsistently and more sparingly than the Commission intended." *Rodriguez*, 44 F.4th at 1233. As such, § 3B1.2 was amended "to induce district courts to grant mitigating role adjustments more frequently." *See id*.

Here, the facts weigh in favor of applying a reduction. Ms. Nicolas did not, on her own, devise a scheme to commit fraud. Rather, she was introduced to the scheme by two acquaintances, J.A. and Kelly [LNU]. *See* PSR ¶ 26; Exhibit C, Application for Warrant, filed under seal. In early 2020, J.A. used Ms. Nicolas's address to collect unemployment insurance benefit in other peoples' names. *See id.*; Exhibit E, Complaint, Santa Barbara County Superior Court Case No. 24CR06899, p. 2 (indicating "On January 8, 2020, [J.S.A.] filed a claim for unemployment insurance benefits in the name of [victim J.E.]."). Specifically, J.A. and Kelly used victims' information to apply for unemployment insurance benefits, which were mailed to Ms. Nicolas's address. At first, Ms. Nicolas simply allowed J.A. and Kelly to use her address. J.A. then took those EDD cards to withdraw cash from ATMs. Exh. C, p. 18 of 35. At some point, Ms. Nicolas began to participate more substantively.

In a strange turn of events, in November of 2020, J.A. submitted a fraud claim to the United States Postal Service, falsely claiming that Ms. Nicolas had stolen her identity and her mail. Exh. C, pp. 18-21 of 35. As noted in the warrant application, law enforcement "believe[d] that part or all of [J.A.'s] claims were false." *Id.* at p. 19 of 35. Her claims did not make any sense because they were not true. Indeed, it appears J.A.'s fraud conduct preceded Ms. Nicolas's involvement. *See* Exhibit E. J.A. and Ms. Nicolas were charged together as co-defendants in a state case, which was ultimately dismissed. *See* Exhibit E; PSR ¶ 69.

For some reason, the government has not pursued federal charges against J.A. Nonetheless, the defense submits that Ms. Nicolas is substantially less culpable than

3

J.A., who devised the scheme, left a paper trail leading to Ms. Nicolas, and appears to have profited significantly from the scheme.

Should the Court apply a two-level reduction, the adjusted total offense level would be 11. Based on a total offense level of 11 and Criminal History Category II, the adjusted guideline range is 10-16 months.

## B.   Special Condition Number 10

The Probation Office recommends a condition that Ms. Nicolas perform 20 hours of community service per week as directed by the Probation & Pretrial Services Office. The defense objects. Ms. Nicolas will have a lot on her plate. Upon release from custody, Ms. Nicolas's focus will be on reunifying with her family, securing housing, and reestablishing any benefits she is eligible to receive. Longterm, she will need to focus on staying sober and managing her mental health. The defense objects to imposing a community service requirement. Ms. Nicolas will need to focus her time and energy on herself and her family first, in order to be successful on supervised release.

## III. SENTENCING ARGUMENTS

The defense submits that a sentence of 13 months' imprisonment, followed by three years of supervised release, is reasonable and sufficient. The Sentencing Guidelines are not mandatory and a district court should not presume the guidelines range is reasonable. *See United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Ultimately, the Court must fashion a sentence that is appropriate, taking into account all of the section 3553(a) factors. *Gall*, 552 U.S. at 49-50. Under section 3553(a), a sentence should be sufficient, but not greater than necessary, to achieve the goals of sentencing. *See also Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Through this directive of parsimony, Congress embedded in federal sentencing legislation the moral imperative to impose on any individual the least amount of suffering demanded by the general welfare. Consideration of the advisory Guidelines

4

range, while required, is subordinate to the overarching Congressional mandate that the punishment be no greater than necessary to achieve the objectives of sentencing. As such, the sentencing Court must impose a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing.

Ms. Nicolas had a tragic upbringing marked by instability, abuse, and addiction. Her early childhood was spent growing up in poverty in North Las Vegas, Nevada. Her mother kept her in the living room because there were cockroaches all over their shared apartment. Ms. Nicolas recalls walking to the park with water slides near her home, standing outside the gate, watching and wishing she could go inside.

Both of Ms. Nicolas's parents struggled with what she now recognizes as a drug addiction. They were intravenous needle users of methamphetamine and heroin. Compounding the trauma of living with two parents who were abusing street drugs, Ms. Nicolas's father was physically and mentally abusive to her mother. Ms. Nicolas regularly witnessed weekly, if not daily, beatings. She also got spanked and hit with a belt for "acting up." When the beatings were especially bad, Ms. Nicolas's mother would take her and flee to California. Eventually, when Ms. Nicolas was ten years old, her mother moved them permanently to Santa Maria, California.

Although Ms. Nicolas had escaped an abusive home environment, her life was still wrought with turmoil and instability as she and her mother struggled financially. Her mother was on welfare and unable to provide a stable home for Ms. Nicolas. They bounced around between family, friends, and hotels. Ms. Nicolas struggled in school due to the constant movement, made even more challenging by the fact that she was diagnosed with dyslexia. She began using marijuana at the age of 13 in an attempt to cope with the stress and trauma. Her learning disability and homelessness caused Ms. Nicolas to have to repeat her senior year of high school. Despite these setbacks, Ms. Nicolas persevered and graduated from Delta High School in 1997. She went on to complete over 200 credit hours at Ellen Hancock College. She also obtained a California State Board license in cosmetology.

Throughout Ms. Nicolas's academic pursuits, she experienced periods of mania and depression. In her early 20's, she was diagnosed with bipolar disorder. Unfortunately, she lacked access to mental health treatment. To manage her symptoms, she began self-medicating with street drugs. As is now more widely recognized in the medical literature, "[s]ubstance use disorders (SUD) are highly prevalent in bipolar disorder (BD)," and "recent data suggest common neurobiological and genetic underpinnings and epigenetic alternations."[2] Specifically, individuals with bipolar disorder may self-medicate to "try to try to mimic hypomanic and manic states which they consider as the desirable mood state."[3] "During depressive episodes, stimulants are used as an attempt to alleviate depressive mood or low energy level. Sedatives are often consumed to numb sadness, anxiety symptoms, or hopelessness."[4]

In 1999, Ms. Nicolas suffered the tragic loss of her firstborn child, Christopher. He was only six months old when he died. Christopher died while in his father's care. Ms. Nicolas, who split custody with Christopher's father, never got a clear answer regarding the cause of death. She never got real closure. She continues to grieve the sudden and tragic loss of her first child.

Despite these traumatic events, Ms. Nicolas tried hard to support herself. She worked various jobs, including at hair salons, fast food restaurants, housekeeping, and as a crossing guard. She struggled to maintain long-term employment, however, and most of her jobs only lasted a few months. She had her first daughter, Isabella, who she raised without help from Isabella's father.

In 2005, Ms. Nicolas met her now-husband Fabian Nicolas. It was a whirlwind romance. They fell in love, and were married in April 2006. Their son Capone was born in September of 2006. In 2008, they had their second child together, Karmah.

---

[2] Preuss, U. W., Schaefer, M., Born, C., & Grunze, H. (2021). Bipolar Disorder and Comorbid Use of Illicit Substances. *Medicina*, *57*(11), 1256. https://doi.org/10.3390/medicina57111256.

[3] *Id.*.

[4] *Id.*

6

Ms. Nicolas and her family struggled financially. Fabian worked odd jobs as an electrician, a mechanic, and a crossing guard. Ms. Nicolas worked in housekeeping and as a crossing guard, but struggled to maintain consistent employment. They relied on government assistance to make ends meet. Ms. Nicolas and her husband adored their children, and did their best to make sure they were fed, cared for, and loved. Indeed, Karmah's letter in support of her mother shows they succeeded in providing love and good memories. *See* Exhibit A, Letter from Karmah Nicolas.

In 2020, Ms. Nicolas and her family were in dire financial straits. Ms. Nicolas struggled to pay rent, keep food on the table, and pay for her children's school supplies and sports equipment. The bills kept stacking up. At the time, Ms. Nicolas used marijuana to cope with the daily stress. She was introduced to the fraud conduct by two acquaintances. These two acquaintances initiated the fraudulent activity, using Ms. Nicolas's address as a mailing address for the credit cards. Eventually, Ms. Nicolas eventually took over. Ms. Nicolas regrets her actions and is remorseful for any and all harm to victims she has caused.

Shortly after her initial appearance on this case, Ms. Nicolas lost her housing. She and her family were evicted from their low income housing in August of 2021. She sent her children to live with other family members. Ms. Nicolas and her husband were on the street alone. Then, they were separated for approximately one month when Fabian was arrested on a theft charge. Ms. Nicolas was alone and homeless. Then, all of her possessions were stolen, including her phone. Ms. Nicolas was living on the street in Santa Maria, with no way to reach her Pretrial Services Officer. That is when the first warrant issued for her arrest.

On September 7, 2023, Ms. Nicolas appeared before this Court on an order to show cause why her bond should not be revoked. Ms. Nicolas had never received in patient drug treatment before, and asked to be released in order to receive treatment. The ourt ordered Ms. Nicolas's release, with the condition she reside at and participate in a residential drug treatment and mental health counseling program. Ms. Nicolas

began treatment later than month at Alcoholism Center for Women. After a few weeks, she transferred to Little House Recovery Home in Bellflower.

Ms. Nicolas was receiving treatment at Little House between October through December of 2023. This time was particularly challenging for her. Just before the holidays, Ms. Nicolas relapsed. Feeling lost and missing her family desperately, Ms. Nicolas returned to Santa Maria. She stopped communicating with her Pretrial Services Officer and did not appear for court.

On October 18, 2024, Ms. Nicolas was arrested by local police in Santa Barbara County. Her arrest was on a state complaint that appears to charge her (and J.A.) with the same conduct she is charged with here. Exhibit E, Complaint. Ms. Nicolas was detained. The D.A. dismissed the state case in January of 2025, and Ms. Nicolas was brought to federal court.

Ms. Nicolas has never spent this much time in custody. Being apart from her family has been extremely difficult. Nonetheless, she has tried to make the most of her time in custody. In Santa Barbara County Jail, she completed a "Criminals and Gang Members Anonymous" course, where she learned about adaptive thinking and rehabilitation. At MDC, she completed a program in Emotional Regulation. Exhibit B. Despite the challenges of being in custody, Ms. Nicolas has kept in contact with her husband and daughter, and is eager to reunite with them. Tragically, Ms. Nicolas learned that two of her relatives passed away since she was in custody. She is distraught that she cannot attend those funerals or process the loss with her family.

Ms. Nicolas has experienced the harsh punishment of being in custody, and will not easily put herself in a position like this again. She is committed to staying on her medications, staying sober, and staying on the right path. She eagerly hopes for the chance to rebuild her life and be reunited with her family.

///

## IV. CONCLUSION

For these reasons, the defense requests a sentence of 13 months' imprisonment, and three years of supervised release. This sentence is reasonable and sufficient, but not greater than necessary.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 18, 2025          By  /s/ Erica Choi
                                  ERICA CHOI
                                  Deputy Federal Public Defender
                                  Attorney for SHAUNA NICOLAS